NO.  16-60118

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

STATE OF TEXAS, TEXAS COMMISSION ON ENVIRONMENTAL
QUALITY, and PUBLIC UTILITY COMMISSION OF TEXAS; LUMINANT
GENERATION COMPANY LLC, BIG BROWN POWER COMPANY LLC,
LUMINANT MINING COMPANY LLC, BIG BROWN LIGNITE COMPANY
LLC, and LUMINANT BIG BROWN MINING COMPANY LLC; UTILITY AIR
REGULATORY GROUP; SOUTHWESTERN PUBLIC SERVICE COMPANY;
COLETO CREEK POWER L.P.; NUCOR CORPORATION; and NRG TEXAS
POWER LLC,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
and GINA McCARTHY, Administrator,
United States Environmental Protection Agency,

*Respondents*.

**MOTION FOR LEAVE TO INTERVENE BY SIERRA CLUB AND
NATIONAL PARKS CONSERVATION ASSOCIATION**

<u>*s/ Mary Whittle*</u>
Mary Whittle
Earthjustice
3904 Bonnell Drive
Austin, TX 78731
512.537.2791 (phone)
mwhittle@earthjustice.org

Filed:  March 10, 2016          *Additional Counsel listed on next page*

*s/ Matthew Gerhart*

Matthew Gerhart
Earthjustice
633 17th St, Suite 1600
Denver, CO 80202
303.996.9612 (phone)
303.623.8083 (facsimile)
mgerhart@earthjustice.org

*Counsel for Sierra Club and National Parks
Conservation Association*


Joshua D. Smith
Sierra Club
85 Second Street, 2nd Floor
San Francisco, CA 94105
(415) 977-5560 (phone)
(415) 977-5793 (facsimile)

Elena Saxonhouse
Sierra Club
85 Second Street, 2nd Floor
San Francisco, CA 94105
(415) 977-5560 (phone)
(415) 977-5793 (facsimile)

*Counsel for Sierra Club*

NO. 16-60118

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

STATE OF TEXAS, TEXAS COMMISSION ON ENVIRONMENTAL
QUALITY, and PUBLIC UTILITY COMMISSION OF TEXAS; LUMINANT
GENERATION COMPANY LLC, BIG BROWN POWER COMPANY LLC,
LUMINANT MINING COMPANY LLC, BIG BROWN LIGNITE COMPANY
LLC, and LUMINANT BIG BROWN MINING COMPANY LLC; UTILITY AIR
REGULATORY GROUP; SOUTHWESTERN PUBLIC SERVICE COMPANY;
COLETO CREEK POWER L.P.; NUCOR CORPORATION; and NRG TEXAS
POWER LLC,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
and GINA McCARTHY, Administrator,
United States Environmental Protection Agency,

*Respondents*.

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of Rule 28.2.1 have an interest in

the outcome of this case. These representations are made in order that the judges

of this court may evaluate possible disqualification or recusal.

1. <u>Petitioners</u>: State of Texas, Texas Commission on Environmental
   Quality, Public Utility Commission of Texas, Luminant Generation

i

Company LLC, Big Brown Power Company LLC, Luminant Mining Company LLC, Big Brown Lignite Company LLC, Luminant Big Brown Mining Company LLC, Utility Air Regulatory Group, Southwestern Public Service Company, Coleto Creek Power L.P., Nucor Corporation, and NRG Texas Power LLC.

2.  <u>Counsel for Petitioners State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas</u>: Ken Paxton, Attorney General of Texas; Charles E. Roy, First Assistant Attorney General of Texas; James E. Davis, Deputy Attorney General for Civil Litigation; Scott A. Keller, Solicitor General; Lisa A. Bennett, Assistant Solicitor General; Kellie E. Billings-Ray with the Office of the Attorney General of Texas.

3.  <u>Counsel for Petitioners Luminant Generation Company LLC, Big Brown Power Company LLC, Luminant Mining Company LLC, Big Brown Lignite Company LLC, and Luminant Big Brown Mining Company LLC</u>: P. Stephen Gidiere III and David W. Mitchell with Balch & Bingham, LLP; Stephanie Z. Moore with Luminant Generation Company LLC; and Daniel J. Kelly with Energy Future Holdings Corp.

4.  <u>Counsel for Petitioner Southwestern Public Service Company</u>: Debra J. Jezouit and William M. Bumpers with Baker Botts LLP; Ann M. Seha with Xcel Energy Services Inc.

5.  <u>Counsel for Petitioner Utility Air Regulatory Group</u>: Norman W. Fichthorn and Aaron M. Flynn with Hunton & Williams LLP.

6.  <u>Counsel for Petitioner Coleto Creek Power, LP</u>: Derek McDonald and Carlos R. Romo with Baker Botts LLP.

7.  <u>Counsel for Petitioner Nucor Corporation</u>: David Taggart and Natalie Taylor with Bradley, Murchison, Kelly & Shea, LLC.

8.  <u>Counsel for Petitioner NRG Texas Power LLC</u>: Aaron Streett, Matthew L. Kuryla, and Devi Chandrasekaran with Baker Botts LLP.

9.  <u>Respondents</u>: United States Environmental Protection Agency; Gina McCarthy, Administrator, U.S. Environmental Protection Agency; Ron Curry, Regional Administrator, U.S. Environmental Protection Agency.

10. <u>Counsel for Respondents United States Environmental Protection Agency and Gina McCarthy</u>: Lorretta E. Lynch, Attorney General of the United States; Avi Garbow, General Counsel, U.S. Environmental Protection Agency; and John C. Cruden, Assistant Attorney General, and Dustin Maghamfar and Dave Carson with the U.S. Department of Justice Environment & Natural Resources Division.

11. <u>Proposed Intervenors</u>: Sierra Club and National Parks Conservation Association are each non-profit organizations that maintain an open membership invitation to organizations businesses, individuals, and the public in general.  Accordingly, Intervenors' memberships consist of many individual members.

   Neither Sierra Club nor National Parks Conservation Association has parent companies, and no publicly-held company owns a 10% or greater interest in Sierra Club or National Parks Conservation Association.

12. <u>Counsel for Proposed Intervenors</u>: Mary Whittle and Matthew Gerhart with Earthjustice; Joshua Smith, Elena Saxonhouse, and Sanjay Narayan with Sierra Club.

Respectfully submitted,

<u>s/ Mary Whittle</u>
Mary Whittle
Earthjustice
3904 Bonnell Drive
Austin, TX 78731
512.537.2791 (phone)
mwhittle@earthjustice.org

## MOTION FOR LEAVE TO INTERVENE

Pursuant to Rule 15(d) of the Federal Rules of Appellate Procedure and Fifth Circuit Local Rule 15.5, Sierra Club and National Parks Conservation Association ("NPCA") (collectively, the "Conservation Groups") respectfully move for leave to intervene in support of Respondents United States Environmental Protection Agency and Gina McCarthy (collectively, "EPA") in the above-captioned consolidated petition proceedings.[1]  This Court regularly allows citizen groups to intervene in cases seeking review of EPA actions and should do so again here.[2]

## INTRODUCTION

These cases involve challenges to an EPA rule that requires installation of pollution controls to protect national parks and wilderness areas from harmful air pollution that mars visibility.  The rule also clarifies certain provisions of the Clean Air Act and the Regional Haze Rule to ensure national uniformity.  *See Approval and Promulgation of Implementation Plans; Texas and Oklahoma; Regional Haze State Implementation Plans; Interstate Visibility Transport State Implementation*

---

[1] Petitioners are The State of Texas, Texas Commission on Environmental Quality, and Public Utility Commission of Texas (collectively, "Texas"); Luminant Generation Company LLC, Big Brown Power Company LLC, Luminant Mining Company LLC, Big Brown Lignite Company LLC, and Luminant Big Brown Mining Company LLC; Utility Air Regulatory Group; Southwestern Public Service Company; Coleto Creek Power L.P.; Nucor Corporation; and NRG Texas Power LLC (collectively, "The Utilities").

[2] *See, e.g.*, Order Granting Intervention, *Southwestern Electric Power Co. v. EPA*, No. 15-60821 (5th Cir. Dec. 30, 2015) (Doc. 00513325152); *Texas v. EPA*, 690 F.3d 670 (5th Cir. 2010); *Galveston-Houston Ass'n for Smog Prevention v. EPA*, No. 06-61030, 2008 WL 3471872 (5th Cir. 2008); *BCCA Appeal Group v. EPA*, 355 F.3d 817 (5th Cir. 2003).

*Plan to Address Pollution Affecting Visibility and Regional Haze; Federal*

*Implementation Plan for Regional Haze*, 81 Fed. Reg. 296 (Jan. 5, 2016)

(hereinafter the "haze plan").  EPA's haze plan will reduce excessive air pollutant

emissions at eight power plants in Texas, *id.* at 305-09, and will improve visibility

in nineteen national parks and wilderness areas in seven different states, including

Texas and Oklahoma.[3]  The plan also will provide public health and economic

benefits to the people that live, work, and breathe the air around these power

plants, as well as the thousands of people who visit and work in these national

parks and wilderness areas.

From March 1 to March 7, 2016, Texas and the Utilities filed petitions for

review of EPA's final rule in this Court, which were consolidated in this

proceeding.  The petitions seek to weaken or set aside entirely EPA's final rule,

thereby threatening benefits that the rule promises.  The petitions also seek to

undermine uniform application of the Clean Air Act's visibility provisions across

the country.  As explained further below, EPA does not represent the Conservation

Groups' legally protectable interests in EPA's haze plan.  Therefore, the

Conservation Groups respectfully move to intervene on the side of EPA and in

defense of the haze rule under Federal Rule of Appellate Procedure 15(d).

---

[3] *See* EPA-R06-OAR-2014-0754-0007 at Attachment TX116-007-33 [Vis Modeling Summary Spreadsheet]; *see also* Proposed Rule, 79 Fed. Reg. 74,818, 74,854-55 (Dec. 16, 2014) (noting Class I areas impacted by Texas emissions).

2

EPA's haze plan treats Texas fairly—even generously, considering the size of the problem.  The plan is consistent with the statutory goal of eliminating haze, and it is consistent with haze plans EPA approved for other states. The costs per ton of pollution removed are more than reasonable, and well below the cost of controls that other states have required.  And the benefits are significant—not only for visibility, but for public health and the economy as well.  Overall, the plan is a bargain that brings some of the worst-polluting plants in the nation, which lack modern pollution controls, into line with industry standards applicable to the rest of the country.

By filing for review both in this Court and the Tenth Circuit Court of Appeals, Texas and the Utilities ignored the Clean Air Act's judicial review provision.  A petition for review of any agency action should be "filed only in the United States Court of Appeals for the District of Columbia if such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination."  42 U.S.C. 7607(b)(1).  The haze rule is based on a determination that has nationwide scope and effect.  In the final rule, EPA published its explicit finding that any review is appropriate only in the D.C. Circuit.  81 Fed. Reg. at

3

345. Therefore, this Court has no jurisdiction to review the rule or to grant the requested stay.[4]

## BACKGROUND

### A.    The Clean Air Act's Regional Haze Requirements.

In what has been lauded as "America's best idea," Congress first set aside national parks and wilderness areas in the nineteenth century to preserve some of the nation's most spectacular scenery and wildlife habitat.[5]  Today, these iconic areas are marred by air pollution.  Much of the air pollution in national parks stems from power plant emissions of sulfur dioxide and nitrogen oxides, which react in the atmosphere to form "haze" pollution many miles downwind of the power plants.

---

[4] *See, e.g.,* Order, *Luminant Generation Co., LLC v. EPA*, No. 15-60424 (5th Cir. Aug. 28, 2015) (transferring a challenge to EPA's Startup, Shutdown, and Maintenance SIP Call to the D.C. Circuit despite Luminant's argument regarding local or regional impacts); *Texas v. EPA,* No. 10-60961, 2011 WL 710598, at *3 (5th Cir. Feb. 24, 2011) (concluding that EPA's promulgation of a Texas-specific federal implementation plan was a rule of national applicability and transferring Texas's petition for review to the D.C. Circuit); *ATK Launch Systems, Inc. v. EPA*, 651 F.3d 1194, 1197 (10th Cir. 2011) (transferring petitions for review of EPA's 2006 $PM_{2.5}$ NAAQS designation to the D.C. Circuit even though the petitions challenged only the designation of two counties); *Alcoa, Inc. v. EPA*, No. 04-1189, 2004 WL 2713116 (D.C. Cir. Nov. 24, 2004) (concluding that all petitions challenging certain ozone nonattainment classifications belonged in the D.C. Circuit where the Administrator "unambiguously determined" that the rule has "nationwide scope and effect" under 42 U.S.C. § 7607(b)(1)).

[5] John Copeland Nagle, *The Scenic Protections of the Clean Air Act*, 88 N.D. L. Rev. 571, 576 (2011).

4

To protect the "intrinsic beauty and historical and archaeological treasures"[6] of the nation's public lands, Congress established the Clean Air Act's visibility protection mandate, intended to reduce—and ultimately eliminate—man-made haze pollution in national parks, wilderness areas, and other designated "Class I" areas. 42 U.S.C. § 7491. Subsequently, EPA issued Regional Haze Regulations to implement this statutory provision by establishing requirements to assure reasonable progress towards the national goal of achieving natural visibility conditions at every Class I area by 2064. 40 C.F.R. §§ 51.308(d)(1)(i)(B), (d)(1)(ii).

Congress directed states to submit to EPA by 2007 proposed implementation plans that include enforceable emission limits at "major stationary sources" of haze-causing pollution to ensure "reasonable progress" toward the national goal of eliminating haze pollution caused by human activities. 42 U.S.C. § 7491(b)(2); 40 C.F.R. § 51.308(b). The Clean Air Act charges EPA with reviewing each proposed state plan and disapproving the plan if it fails to meet all applicable legal requirements. 42 U.S.C. § 7410(k)(3). Within two years of disapproving a state plan, EPA must issue a federal plan or approve a revised state plan that corrects the deficiency. *Id.* § 7410(c)(1); *see EPA v. EME Homer City Generation*, L.P., 134 S. Ct. 1584, 1600 (2014) (recognizing the Clean Air Act's

---

[6] H.R. Rep. No. 95-294, at 203-04 (1977), *reprinted in* 1977 U.S.C.C.A.N 1077, 1282.

"absolute" mandate that EPA issue a federal plan if it finds a state implementation plan to be inadequate).

## B.    Texas's Proposed Haze Plan.

The scale of visibility-impairing air pollution caused by Texas power plants is staggering.  Texas emits more sulfur dioxide than any other state in the country.[7] That is not because Texas is a larger state; it is because many Texas power plants lack the pollution controls widely used in other states.[8] For example, the Big Brown plant emits sulfur dioxide pollution at a rate that is as much as 50 times higher than plants with modern technology.[9]  As a result, Texas power plants impair visibility in at least nineteen national parks and wilderness areas in seven states.[10]

_____

[7] *See* EPA, Air Markets Program Data, *available at* https://ampd.epa.gov/ampd/.  In fact, the eight power plants subject to the rule together emit more sulfur dioxide than all of the sources in Arkansas, Oklahoma, and Louisiana combined.  *Id.*

[8] *See* EPA-R06-OAR-2014-0754-0008 at 1 (Nov. 2014) (13 units at 6 large facilities in Texas do not have scrubbers to control sulfur dioxide pollution) [EPA, TSD for the Cost of Controls].

[9] *Compare id.* at Attachment TX166.008-086 (Big Brown Unit 1 maximum monthly emission rate: 2.0 lb $SO_2$/mmbtu), *with* 81 Fed. Reg. at 321 (modern scrubber vendors regularly guarantee rates of 0.04 lb $SO_2$/mmbtu).

[10] Emissions from the Texas power plants controlled by this rule damage air quality in: Big Bend and Guadalupe Mountains in Texas; Wichita Mountains in Oklahoma; the Caney Creek and Upper Buffalo Wilderness Areas in Arkansas; Carlsbad Caverns National Park, the Salt Creek, White Mountain, Wheeler Peak, Pecos, Bosque Del Apache, San Pedro, and Gila Wilderness Areas, and Bandelier National Monument in New Mexico; Great Sand Dunes, and Rocky Mountain National Parks in Colorado; Hercules-Glades and Mingo Wilderness Areas in Missouri; and Breton Wilderness Area in Louisiana.  79 Fed. Reg. at 74,854-55; *see also* EPA-R06-OAR-2014-0754-0002, Attachment TX166-002-05, at 1-5, 11-7 through 11-28 [Texas Proposed Haze SIP].

Despite the massive amount of visibility-impairing pollution coming from Texas sources, Texas failed to submit a haze plan to EPA by the 2007 deadline. In 2009, EPA published an official finding to that effect. 74 Fed. Reg. 2392 (Jan. 15, 2009). In response, Texas submitted a proposed haze plan to EPA in 2009, two years after the original deadline. 81 Fed. Reg. at 296. EPA correctly found that Texas's belated submission failed to meet the Clean Air Act's requirements. *Id.* at 298-302.

Texas's do-nothing plan **did not require a single Texas source to reduce air pollution to make reasonable progress**, despite widely available, cost-effective control technology. *Id*. at 300. As a result, Texas's do-nothing plan would not have achieved natural visibility conditions at Big Bend or Guadalupe Mountains until **more than a century after the statute's 2064 natural visibility goal**. *See* Vis Modeling Summary Spreadsheet at "2018 RPG calcs" tab.

In addition, Texas's do-nothing plan would have allowed Texas facilities to continue to pollute areas in Oklahoma without installing the cost-effective controls that Oklahoma is requiring from its own sources of pollution. *See* 76 Fed. Reg. 81,728, 81,729 (Dec. 28. 2011) (issuing a haze plan for Oklahoma that requires six power plant units to meet emission limits based on the use of scrubbers).

**C.     EPA's Federal Implementation Plan for Texas and Oklahoma.**

The Clean Air Act required EPA formally to approve or disapprove Texas's

plan within 18 months of submittal.  42 U.S.C. § 7410(k).  By 2011, EPA still had

not taken final action.  In August 2011, the Conservation Groups sued EPA, and on

March 30, 2012, the district court entered a consent decree requiring EPA to take

final action on the Texas and Oklahoma regional haze plans by a date certain.  *See*

*NPCA v. EPA*, No. 1:11-cv-01548 (ABJ) (D.D.C. consent decree entered Mar. 30,

2012) (ECF Doc. 21).

In December 2015, after numerous delays, EPA issued a final rule approving

in part and disapproving in part Texas's regional haze plan, as well as portions of

Oklahoma's "interconnected" plan.  81 Fed. Reg. at 297.  As required by the Clean

Air Act, 42 U.S.C. § 7410(c)(1), EPA issued a partial federal plan to correct the

deficiencies in Texas's submittal which EPA had disapproved.  81 Fed. Reg. at

297.  To achieve reasonable progress at impacted Class I areas, the federal plan

requires eight of the oldest and dirtiest power plants in Texas to install and operate

pollution controls to reduce their sulfur dioxide emissions.  Seven units must install

new pollution controls called scrubbers, and eight units must upgrade old scrubbers

to achieve the emission limits which modern scrubbers are capable of achieving.[11]

---

[11] Specifically, the federal implementation plan requires Big Brown 1 & 2, Monticello 1 & 2,
Coleto Creek 1, and Tolk 171B & 172B to install new scrubbers and Sandow 4, Martin Lake 1,
2, & 3, Monticello 3, and Limestone 1 & 2 to upgrade their existing, inefficient scrubbers.  The

8

EPA predicts that its haze plan will reduce harmful sulfur dioxide pollution by approximately 230,000 tons annually. *Id.* at 298. These emissions reductions will clean the air and improve the scenic views at national parks and wilderness areas throughout the region. The reductions also will yield significant health benefits and further the "overriding" and "paramount" public health goals of the Clean Air Act. *See* H.R. Conf. Rep. 95-564, at 189 (1977), *reprinted in* 1977 U.S.C.A.N.N. 1502, 1570.

Sulfur dioxide causes and exacerbates asthma and other respiratory diseases, leads to increased hospitalizations and morbidity, and forms particulate matter that can aggravate respiratory and heart diseases and cause premature death.[12] By reducing harmful air pollution, EPA's haze plan will save at least 300 lives, prevent thousands of asthma-related or cardiovascular events and hospitalizations, and prevent tens of thousands of lost work and school days *each year*. EPA-R06-OAR-2014-0754-0071 at 16 (Apr. 18, 2015) [Report of Dr. George Thurston]. The public health benefits from the rule exceed $3 billion annually. *See id.* at 17-18.

---

plan requires San Miguel to reduce its emissions with existing controls. *See* 81 Fed. Reg. at 305, 351-52.

[12] EPA, Sulfur Dioxide: Health, *available at* http://www3.epa.gov/airquality/sulfurdioxide/health.html.

**D.    The Conservation Groups.**

The Conservation Groups are national non-profit Conservation Groups with tens of thousands of members in Texas and Oklahoma dedicated to protecting natural areas and the people who use them from the environmental and public health impacts of air pollution.  Decl. of Reggie James, ¶¶ 4-7, attached as Ex. A; Decl. of Laura Connors, ¶¶ 3, 6, attached as Ex. B.[13]  To further those interests, the Conservation Groups have participated throughout the development of the rule that the petitioners now challenge.  *See*, *e.g.*, EPA-R06-OAR-2014-0754-0067 (Apr. 20, 2015) [Comments of Earthjustice, NPCA, and Sierra Club].  The Conservation Groups submitted extensive expert analyses and legal comments urging EPA to strengthen EPA's proposed rule, and many thousands of the Conservation Groups' members and supporters wrote to EPA in support of a strong rule.[14]  Moreover, the Conservation Groups sued EPA under the Clean Air Act to compel the rulemaking that Texas and the Utilities now seek to vacate.

**STANDARD OF REVIEW**

A motion for leave to intervene need only "contain a concise statement of the interest of the moving party and the grounds for intervention."  Fed. R. App. P. 15(d).  Although Rule 15 does not provide a standard of review, the Fifth Circuit

---

[13] The Sierra Club currently has over 640,000 members nationwide, including 23,355 in Texas and 3,297 in Oklahoma.  James Decl. ¶ 8.  NPCA has over 350,000 active members nationwide, including 2,484 in Oklahoma and 20,848 in Texas.  Connors Decl. ¶ 6.

[14] *See* EPA-R06-OAR-2014-0754-0067 to 0073.

considers two factors for determining whether a party may intervene: (1) the

statutory design of the relevant act; and (2) the policies underlying intervention in

district courts pursuant to Federal Rule of Civil Procedure 24.  *Texas v. U.S. Dep't*

*of Energy ("Texas v. DOE")*, 754 F.2d 550, 551 (5th Cir. 1985) (citing *Int'l Union,*

*United Auto., Aerospace and Agric. Implement Workers of Am. AFL-CIO, Local*

*283 v. Scofield*, 382 U.S. 205 (1965)).

## ARGUMENT

This Court should grant the Conservation Groups' Motion to Intervene

because the design of the Clean Air Act provides for citizen group participation

and the policies underlying intervention support the Conservation Groups'

inclusion.  Further, granting leave to intervene here is consistent with rulings of

this Court and other circuits in similar cases where citizen groups intervene to

defend EPA's Clean Air Act plans from state and industry challenges.[15]

### A.    Citizens Have a Defined Role in Clean Air Act's Statutory Scheme.

The Clean Air Act authorizes citizens to sue to enforce the statute's

requirements, including by suing EPA for failure to comply with its

nondiscretionary duties.  42 U.S.C. § 7604(a)(2); *see also Natural Res. Def.*

---

[15] *See, e.g., Texas v. EPA*, 690 F.3d at 670 (intervention granted in challenge to EPA disapproval of a state Clean Air Act plan); *Oklahoma v. EPA*, 723 F.3d 1201 (10th Cir. 2013) (intervention granted in challenge to Oklahoma regional haze plan); *Nebraska v. EPA*, No. 12-3084, 2016 WL 403655 (8th Cir. Feb. 3, 2016) (intervention granted in challenge to Nebraska regional haze plan); *NPCA v. EPA*, 788 F.3d 1134 (9th Cir. 2015) (intervention granted in challenge to Montana regional haze plan).

*Council, Inc. v. Train*, 510 F.2d 692, 699-700 (D.C. Cir. 1974) (in enacting the Clean Air Act's citizen suit provision, Congress "took broad steps to facilitate the citizen's role in the enforcement of the Act," such as permitting any citizen to bring an action against EPA for failing to discharge a mandatory duty). The Conservation Groups exercised their rights under the Clean Air Act's citizen suit provision, 42 U.S.C. § 7604(a)(2), to compel EPA to undertake the rulemaking that Texas and the Utilities now seek to vacate. *See NPCA v. EPA*, No. 1:11-cv-01548 (ABJ) (D.D.C. consent decree entered Mar. 30, 2012).

The Clean Air Act also requires both states and EPA to provide citizens with notice and an opportunity to comment on proposed state and federal implementation plans. *See* 42 U.S.C. §§ 7410(a), 7607(d), (h). The Conservation Groups submitted extensive technical and legal comments concerning both Texas's proposed state plan and EPA's proposed federal plan.[16] In addition, more than 100 members of the Conservation Groups spoke in support of EPA's proposed rule at two separate public hearings in Oklahoma City, Oklahoma, and Austin, Texas, and more than 4,500 members and supporters submitted written comments in support of the proposed rule.[17] The Conservation Groups, "as a participant in the

---

[16] *See* Comments of Earthjustice, NPCA, and Sierra Club.

[17] *See* EPA-R06-OAR-2014-0754-0072 to 0073; EPA-R06-OAR-2014-0754-0087 at 1, 678 [EPA Response to Comments].

proceedings below, [are] intimately involved with the issues before the reviewing court." *Texas v. DOE*, 754 F.2d at 552.

In summary, the Conservation Groups should be granted intervention because (1) they participated in the challenged rulemaking by obtaining court relief which led to the rule's issuance and submitting detailed public comments to strengthen and support the rule and (2) the Clean Air Act emphasizes citizen participation and enforcement.

## B. The Policies Underlying Federal Rule of Civil Procedure 24 Weigh In Favor of Intervention.

The Conservation Groups satisfy each of the four requirements for intervention as-of-right under Federal Rule of Civil Procedure 24(a): (1) the motion is timely; (2) the groups have cognizable interests in the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the groups' ability to protect those interests; and (4) no existing party to the suit adequately represents the groups' interests. *See Sierra Club v. Espy*, 18 F.3d 1202, 1204-05 (5th Cir. 1994).

### 1. *The Motion is Timely.*

The Conservation Groups' Motion to Intervene is being filed less than two weeks after the filing of the initial March 1, 2016 petition for review—well within the 30-day deadline for intervention. *See* Fed. R. App. P. 15(d). Although some of the Utilities have filed a motion to stay, no responsive pleadings have been filed,

13

and the Court has not issued any orders.  For these reasons, the Motion to Intervene is timely.

2.      *The Conservation Groups Have Protectable Interests in Defending the Haze Rule.*[18]

The Conservation Groups have several interests in Texas and the Utilities legal challenge to the rule that are "direct, substantial, and legally protectable." *Texas v. DOE*, 754 F.2d at 552 (quoting *New Orleans Publ. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984)).

First, Conservation Groups and their members have a direct, substantial, and legally protectable interest in reducing the haze pollution that impairs their ability to use and enjoy national parks and wilderness areas.  Members of the Conservation Groups regularly visit the national parks and wilderness areas where visibility is impaired by the power plants regulated by EPA's plan, and these members are harmed by haze pollution which diminishes their views in the parks and reduces their enjoyment from hiking, camping, and otherwise recreating in these natural areas.[19]  By reducing the haze pollution that harms the Conservation

---

[18] Although an intervenor need not show Article III standing to intervene as a matter of right, *see Ruiz v. Estelle*, 161 F.3d 814, 832 (5th Cir. 1998), the Conservation Groups have standing to intervene.  If a movant has Article III standing, the party is "deemed to have a sufficiently substantial interest to intervene" under the Rule 24 interest test.  *See Meek v. Metro. Dade County,* 985 F.2d 1471, 1480 (11th Cir. 1993).

[19] *See* James Decl. ¶¶ 9-11; Decl. of Adrienne Gautier, ¶¶ 4-5, attached as Ex. E; Decl. of Arthur Kuehne, ¶¶ 4-6, attached as Ex. F; Decl. of Evelyn Merz, ¶¶ 7-9, attached as Ex. G; Decl. of James Moody, ¶¶ 6-9, attached as Ex. H; Decl. of Philip Russell, ¶¶ 5-6, attached as Ex. I; Decl.

Groups' members, EPA's rule will benefit the Conservation Groups and their members.

Second, Conservation Groups and their members have a direct, substantial, and legally protectable interest in preserving the health benefits of EPA's plan. EPA's plan will reduce the public health toll of Texas's excessive sulfur dioxide pollution, which causes Conservation Groups' members to suffer increased risks of premature death, respiratory diseases, and heart disease.[20]  By dramatically reducing sulfur dioxide pollution in Texas, EPA's plan will improve the health of the Conservation Groups' members.

Third, the Conservation Groups have a direct, substantial, and protectable interest in defending the implementation of the consent decree which the Conservation Groups had entered in order to compel EPA to take final action on the proposed Texas and Oklahoma haze plans.  *See NPCA v. EPA*, No. 1:11-cv-01548 (ABJ) (D.D.C. consent decree entered Mar. 30, 2012).  Moreover, the Conservation Groups invested substantial time and resources submitting detailed comment letters to EPA on Texas's regional haze plan as well as the agency's proposal to disapprove and replace that plan with a federal plan.  77 Fed. Reg.

---

of John Yarber, ¶ 8, attached as Ex. K; Decl. of Ann Bornholdt, ¶¶ 5-6, attached as Ex. C; Decl. of Russell Seal, ¶¶ 7-8, attached as Ex. J.

[20] *See* Report of Dr. George Thurston; Gautier Decl. ¶ 6; Kuehne Decl. ¶ 9; Merz Decl. ¶¶ 11-14; Moody Decl. ¶¶ 10-12; Russell Decl. ¶ 7; Yarber Decl. ¶ 11; Seal Decl. ¶¶ 11-12; Bornholdt Decl. ¶ 7; Decl. of Charles Faupel, ¶¶ 5-10, attached as Ex. D.

72,512, 72,515-72 (Dec. 5, 2012) (responding to the Conservation Groups'

comments).  The Conservation Groups also commissioned and submitted to EPA

three expert reports analyzing EPA's regional haze plan.[21]  Courts have recognized

that public interest groups who take an active role in administrative proceedings

have a significant interest in defending the legality of the proceedings.  *See Prete v.*

*Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006).

Fourth, the mission of each of the Conservation Groups is to preserve and

protect national parks and wilderness areas by, among other things, ensuring that

the Clean Air Act is properly implemented.  *See* James Decl. ¶¶ 4-5; Connors Decl.

¶¶ 3, 6.  "[C]oncern for enforcing the statutory scheme" can provide grounds for

intervention.  *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1204 (5th Cir. 1992); *see Utah*

*Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1252 (10th Cir. 2001).

   3.    *The Disposition of the Action May Impair the Conservation Groups'*
         *Ability to Protect Their Interests.*

If Texas and the Utilities prevail and the Court vacates the haze plan, the

Conservation Groups' ability to protect their interests and the interests of their

members will be impaired.  The Conservation Groups' members will lose the

aesthetic, recreational, health, and environmental benefits described above from

implementation of EPA's plan.  An unfavorable outcome also would negate the

---

[21] *See* Report of Dr. George Thurston; EPA-R06-OAR-2014-0754-0068 [Report of Vicki
Stamper]; EPA-R06-OAR-2014-0754-0070 [Report of Dr. H. Andrew Gray].

substantial effort and resources Conservation Groups have devoted to support the haze plan. Furthermore, the clarified consultation requirements will apply to all states and sources in future planning periods and will help ensure a technically robust analysis showing that upwind states conducted the appropriate four-factor analyses and included all controls necessary for achieving reasonable progress in each downwind Class I area. *See* 81 Fed. Reg. at 308-09. Should Texas and the Utilities succeed in this litigation, Conservation Groups' interest in the "even and consistent" interpretation and national application of the specific requirements of the Clean Air Act and the Regional Haze Rule, including the interstate consultation requirements, would be impeded. *Halogenated Solvents Indus. Alliance v. Thomas,* 783 F.2d 1262, 1265 (5th Cir. 1986) (quoting S. Rep. No. 1196, 91st Cong., 2d Sess. 41 (1970)); *Texas v. EPA*, No. 10-60961, 2011 WL 710598 (5th Cir. Feb. 24, 2011).

     *4.    No Existing Party Adequately Represents the Conservation Groups' Interests.*

The Conservation Groups are not adequately represented by the existing parties. Under Federal Rule of Civil Procedure 24, the final criterion for intervention of right is whether the proposed intervenor has satisfied its "minimal burden" of demonstrating that the existing parties' interests "may not align precisely," and therefore "might" not adequately represent the intervenor's

interests. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538-39 n.10 (1972); *Brumfield v. Dodd*, 749 F.3d 339, 345-46 (5th Cir. 2014).

Here, EPA does not adequately represent the Conservation Groups' interests for at least three reasons.[22] First, Conservation Groups' interests are not coextensive with EPA's obligation under the Clean Air Act to balance the broad (and often conflicting) interests of the public, the states, regulated entities, and its own administrative efficiency. *See WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 997 (10th Cir. 2009). Whether in litigation or potential settlement discussions, EPA may balance those diverse public and private interests in a manner that places a lower priority on the Conservation Groups' goals, which are focused on protecting the national parks and wildernesses, the environment more broadly, and public health from pollution. *See* James Decl. ¶¶ 4-6; Connors Decl. ¶¶ 3, 6.

Second, as a consequence of those different interests, Conservation Groups likely will make different arguments in defense of EPA's plan than EPA will make. Throughout the administrative process, the Conservation Groups disagreed with EPA on critical elements of the haze plan. For example, the Conservation Groups advocated for requiring pollution controls on additional facilities and for a

---

[22] Texas and the Utilities also do not adequately represent the Conservation Groups' interests. Indeed, Petitioners seek to vacate or weaken EPA's haze plan, while the Conservation Groups seek to uphold it.

shorter compliance deadline.  Comments of Earthjustice, NPCA, and Sierra Club at 39, 41-51.  The Conservation Groups also argued that the controls would cost less and the visibility benefits would be greater than EPA estimated.  *Id.* at 35-39.  The Conservation Groups have emphasized the economic and public health benefits of EPA's plan, while EPA has not analyzed those benefits from its rule.[23]  The "lack of unity in all objectives," combined with EPA's unwillingness to make all of a movant's arguments is sufficient to show that the government's representation "may" be inadequate.  *Brumfield*, 749 F.3d at 346.

Third, EPA does not adequately represent the Conservation Groups' interests because the agency began this rulemaking only after the Organizations and other environmental groups sued EPA for its failure to comply with its duties under the Clean Air Act.  *See NPCA v. EPA*, No. 1:11-cv-01548 (ABJ) (D.D.C. filed Aug. 29, 2011).  The Conservation Groups sued the agency precisely because EPA had failed to represent their statutory interests in securing timely and lawful regional haze plans for Texas, Oklahoma, and other states.

Moreover, even with the issuance of the final rule at issue in this case, EPA has yet to fulfill its statutory and consent decree obligations to address all of the required elements of the regional haze program for Texas.  In particular, EPA has

---

[23] However, EPA did estimate in 1999 that implementation of the Regional Haze Rule across the country will yield billions of dollars in economic benefits.  EPA, Fact Sheet: Final Regional Haze Regulations at 7-8 (June 1999), *available at* https://www.epa.gov/sites/production/files/2015-05/documents/1999hazefacts.pdf.

deferred determining best available retrofit technology for some of the oldest and largest sources of pollution in Texas, as required by the Clean Air Act. *See* 81 Fed. Reg. at 296, 301-02. Given the history of adverse litigation between EPA and the Conservation Groups regarding the rule challenged by Texas and the Utilities, EPA cannot adequately represent the Conservation Groups' interests.[24]

In sum, the Conservation Groups satisfy each of the elements of Federal Rule of Civil Procedure 24 for intervention.[25]

## CONCLUSION

For the foregoing reasons, the Conservation Groups respectfully request that the Court grant Sierra Club and NPCA leave to intervene under Federal Rule of Appellate Procedure 15(d) in each of the seven petitions filed by the State and Utilities Petitioners which have been docketed under Case No. 16-60118.

---

[24] Although the Fifth Circuit applies a presumption of adequate representation where the parties share the "same ultimate objective," that presumption does not apply here. Kneeland v. Nat'l Collegiate Athletic Ass'n, 806 F.2d 1285, 1288 (5th Cir. 1987); *see Texas v. DOE*, 754 F.2d at 553. EPA must represent and balance the broad and sometimes conflicting objectives of the public and the petitioners, not just the Conservation Groups' more narrow objective—*i.e.*, obtaining the visibility, environmental, and health benefits of the haze plan as expeditiously as possible. Even if the presumption applied, EPA's delays in implementing a haze plan and the Conservation Groups' subsequent lawsuit to compel timely action is sufficient to overcome any presumption. *See Doe #1 v. Glickman*, 256 F.3d 371, 380-81 (5th Cir. 2001).

[25] In addition to meeting the standards for intervention as of right, the Conservation Groups meet the requirements for permissive intervention. The Conservation Groups intend to assert defenses of EPA's regional haze plan that share questions of law and fact with Texas and the Utilities' challenges, including whether this Court has jurisdiction under 42 U.S.C. § 7607(b)(1) and whether the haze plan is consistent with the Clean Air Act and supported by the evidence contained in the agency's record. Fed R. Civ. P. 24(b)(1). Moreover, the motion is timely filed and no briefing schedule has been set. Thus, intervention would not unduly delay or unduly prejudice Texas or the Utilties' rights. Fed. R. Civ. P. 24(b)(3).

Respectfully submitted,

*s/ Mary Whittle*
Mary Whittle
Earthjustice
3904 Bonnell Drive
Austin, TX 78731
512.537.2791 (phone)
mwhittle@earthjustice.org

*Counsel for Sierra Club and National Parks
Conservation Association*

## CERTIFICATE OF CONFERENCE

Counsel for Conservation Groups conferred with counsel for EPA who indicated that EPA takes no position on the motion.  Counsel for Conservation Groups also conferred with counsel for Texas and the Utilities who take no position at this time but reserve the right to take a position and file a response once they have an opportunity to review the motion.


*s/ Mary Whittle*
Mary Whittle
Counsel for Conservation Groups

## CERTIFICATE OF SERVICE

On this 10th day of March, 2016 a true and correct copy of the foregoing **Motion For Leave To Intervene By Sierra Club And National Parks Conservation Association** was filed with the electronic case filing (ECF) system of the U.S. Court of Appeals for the Fifth Circuit, which currently provides electronic service on the counsel of record listed below.

*s/ Mary Whittle*
Mary Whittle

## CERTIFICATIONS UNDER ECF FILING STANDARDS

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I hereby certify that (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R.25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.


Dated:      March 10, 2016        *s/ Mary Whittle*
                                   Mary Whittle